UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE BARBARA MELENDEZ,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>   Defendant. | Case No. CV 08-1834-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On December 12, 2008, Irene Barbara Melendez ("Plaintiff or Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance benefits. Pursuant to 28 U.S.C. § 636(c), both parties filed consents to proceed before this Magistrate Judge. On September 14, 2009, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff applied for Disability Insurance benefits on October 6, 2005, alleging that she has been unable to work due to a herniated disc and fibromyalgia, among other things.[1] (AR 86.) Plaintiff alleges an onset date of December 16, 2003. (AR 509.)

Plaintiff's claims were denied initially by the Social Security Administration ("SSA") on December 30, 2005, and on reconsideration on March 16, 2006. (AR 46-50, 59.) Claimant filed a timely request for hearing, which was held on March 20, 2008, in San Bernardino, California, before Administrative Law Judge ("ALJ") Mason Harrell, Jr. (AR 505-523.) Plaintiff testified at the hearing and was represented by counsel. (AR 507.)

An unfavorable decision written by ALJ F. Keith Varni was issued on April 11, 2008. (AR 15-22.) The ALJ concluded that Claimant has not been under a disability within the meaning of the Social Security Act from December 16, 2003, through the date of the decision. (AR 15.) The ALJ determined that the Claimant suffers from "a severe impairment in the musculoskeletal system from degenerative changes in the spine." (AR 17.) However, the ALJ found that Claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (AR 19.) In particular, the ALJ found that Claimant is capable of performing her past relevant work as a billing administrator. (AR 22.)

Plaintiff timely filed a request for review of the ALJ's unfavorable decision, which was denied by the Appeals Council on October 23, 2008 (JS 2, AR 507), making the ALJ's written decision the final decision of the Commissioner.

Plaintiff then instituted this action.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

---

[1] Although Plaintiff indicated in her initial application for benefits that she also suffered from phlebitis, skin lupus, acid reflux, and a possible problem with her left kidney (AR 86), it appears that she no longer contends that these conditions are disabling for purposes of this appeal.

1. Whether the finding that Plaintiff can perform the full range of exertionally light work is based on an adequate consideration of her fibromyalgia?

2. Whether the ALJ erred in rejecting the residual functional capacity assessment of treating internist Dr. Salwan and in ostensibly granting controlling weight to that of non-examining State agency reviewer Dr. Taylor-Holmes?

3. Whether the ALJ's finding that Plaintiff's claim of disability is not credible is based on a proper application of the relevant legal standards and is otherwise supported by substantial evidence?

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citations omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).

## DISCUSSION

### A. The Sequential Evaluation

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

Here, at step one the ALJ accepted the Plaintiff's assertion that she has not engaged in substantial gainful activity at any time since her alleged onset date. (AR 17.) At step two, the ALJ rejected Plaintiff's claim that she suffers from the severe physical impairment of fibromyalgia. (AR 17-18.) Although he acknowledged that Plaintiff had been diagnosed with and received treatment for fibromyalgia, he found that "[t]he record does not support a finding that the claimant's diagnosed fibromyalgia causes even more than minimal limitations in her ability to sustain employment, nor does it rule out the other diagnosed severe impairments as being responsible for the symptomology with which she presented." (AR 18.) The ALJ determined only that Plaintiff "has a severe impairment in the musculoskeletal system from degenerative changes in the spine." (AR 17.) At step three, the ALJ found that Plaintiff's

identified impairment did not meet or equal a listing in Appendix I of the regulations. (AR 18.) At step four, the ALJ found that Plaintiff has the residual functional capacity to perform the full range of light work as defined in 20 CFR § 404.1567(b), and that Plaintiff is capable of performing her past relevant work as a billing administrator. (AR 18-19, 22.) Accordingly, the ALJ concluded that Plaintiff was not disabled.

### B. The ALJ Erred at Step Two in Determining That Plaintiff's Fibromyalgia Is Not a Medically Severe Impairment.

Plaintiff challenges the ALJ's determination at step two of the sequential evaluation process. At step two, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). Pursuant to the Commissioner's regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). The severity regulation serves to "identify[] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290) (emphasis added). "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." Social Security Ruling ("SSR") 85-28, 1985 WL 56856 at *3. "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001).

Here, The ALJ determined that Plaintiff "has a severe impairment in the musculoskeletal system from degenerative changes in the spine." (AR 17-18.) Although the ALJ acknowledged that Plaintiff "alleged fibromyalgia as a physical impairment" and that fibromyalgia is "a medically determinable severe impairment" (AR 18), he questioned the validity of Plaintiff's

fibromyalgia diagnosis, found that her fibromyalgia does not impose "more than minimal limitations in her ability to sustain employment," criticized Plaintiff's lack of follow up treatment for the condition, and noted that "most people complaining of fibromyalgia . . . are not totally disabled from working" because of their condition. (AR 18-19.) The ALJ failed to apply properly the de minimis screening standard at step two of the sequential evaluation process and his rejection of Plaintiff's fibromyalgia as a severe impairment was legally and factually unsupported.

### 1. Diagnostic Framework for Fibromyalgia

The Ninth Circuit has determined that fibromyalgia can be disabling. See Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004). In Benecke, the Ninth Circuit described fibromyalgia as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc., 125 F.3d 794, 796 (9th Cir. 1997); Brosnahan v. Barnhart, 336 F.3d 671, 672 n. 1 (8th Cir. 2003). Common symptoms, all of which Benecke experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. See Brosnahan, 336 F.3d at 672 n. 1; Cline v. Sullivan, 939 F.2d 560, 563 (8th Cir. 1991). Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. See Jordan v. Northrop Grumman Corp., 370 F.3d 869, 872 (9th Cir. 2004); Brosnahan, 336 F.3d at 672 n. 1.

Id.; see also Harman v. Apfel, 211 F.3d 1172 (9th Cir. 2000) (affirming reversal of ALJ's decision denying benefits for fibromyalgia); Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (upholding benefits for fibrositis, now known as fibromyalgia).

Jordan v. Northrop Grumman Corp., 370 F.3d 869, 877 (9th Cir. 2003), a case in which benefits were denied for fibromyalgia, recognized that the accepted diagnostic test is that Plaintiff must have pain in 11 of 18 tender points. See also Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (11 of 18 tender points). Objective tests such as myelograms are administered to rule out other diseases and alternative explanations for the pain but do not establish the presence or absence of fibromyalgia. Jordan, 370 F.3d at 873, 877. It cannot be objectively proven. Id. at 877. The symptoms can be worse at some times than others. Id. at 873. The Ninth Circuit recognizes fibromyalgia as a physical rather than a mental disease. Id.

### 2. Diagnosis of Fibromyalgia by Plaintiff's Treating Physicians

In October 2003, Plaintiff was in a car accident, in which she injured her back. (AR 178.) On January 5, 2004, Plaintiff saw Dr. Patel for pain in her neck, low back, and legs, and for right arm weakness and numbness. (AR 178-79.) Dr. Patel did not test Plaintiff for fibromyalgia at that time, but he did find limited ranges of motion of her cervical spine and tenderness over her rhomboids, trapezius, elbow, wrist, hips, and spine. (AR 178-79.) Dr. Patel suspected "a touch of fibromyalgia" and noted that her back and neck pain appeared to be "myofascial." (AR 179.) Plaintiff then followed up with her primary treating internist, Dr. Rasin, on March 31, 2004. Dr. Rasin noted her complaints of pain "all over," which he diagnosed as myofascial pain. (AR 217.) He also noted her fatigue and frequent headaches, and prescribed Pamelor, an antidepressant. (Id.) Dr. Rasin referred Plaintiff to the fibromyalgia clinic for further examination. (AR 217.) Plaintiff again saw Dr. Rasin on May 26, 2004. (AR 212.) She complained of pain, headaches, and nausea after stopping the Pamelor. (Id.) Her upcoming appointment with the fibromyalgia clinic was noted. (Id.) On June 14, 2004, Plaintiff was evaluated in the fibromyalgia clinic by Ms. Smith, a nurse practitioner, on June 14, 2004. (AR 209.) Ms. Smith found 18 of 18 tender points and noted, "very tender" and "mild spasms" in the upper and lower back. (AR 209, 241-42, 249 (emphasis in original).) That same day, Plaintiff

7

was examined by rheumatologist Dr. Yee. (AR 172-73.) Dr. Yee noted Plaintiff's complaints of generalized aches and pains and found all 18 of the 18 tender points diagnostic of fibromyalgia. (AR 172-73.) He noted that, "[c]linically, the patient does have fibromyalgia." (AR 173.) On September 14, 2004, Ms. Smith again examined Plaintiff, found the points to be "very tender," and noted "mild spasms" in the upper and lower back regions. (AR 207.) Plaintiff returned to Dr. Rasin on November 15, 2004, to discuss the symptoms of her fibromyalgia, along with her carpal tunnel syndrome and depression. (AR 205.) She followed up with Dr. Yee on September 22, 2005, who evaluated her positive antinuclear antibody ("ANA") test but found no signs of Lupus or any other disorder stemming from that finding. (AR 198.) Plaintiff returned to Dr. Rasin on September 28, 2005, after unsuccessfully attempting to return to work, having quit after five days due to pain, weakness, and poor sleep. (AR 197.) Dr. Rasin increased Plaintiff's dosage of Pamelor. (Id.) On October 11, 2005, Plaintiff saw Dr. Rasin, who noted that Plaintiff's fibromyalgia points had not changed. (AR 196.) In February 2006, Dr. Rasin reaffirmed Plaintiff's fibromyalgia diagnosis and again increased her Pamelor. (AR 193.)

Plaintiff did not see Dr. Rasin again until February 7, 2007. (AR 471-72.) She explained, however, that her lack of interim treatment was due to no longer having health insurance. (AR 171-72.) On April 8, 2007, Plaintiff saw Dr. Patel again for pain, which was attributed to a flare up of her fibromyalgia. (AR 455-56.) Dr. Patel found tenderness at 11 of the 18 tender points, which is also indicative of fibromyalgia. (Id.)

### 3. The ALJ's Step Two Analysis

The ALJ based his finding that Plaintiff's fibromyalgia was not a severe impairment on the following: (1) although Plaintiff was examined by Ms. Smith, the nurse practitioner, on June 14, 2004, and found to have 18 of 18 "very tender" points consistent with fibromyalgia, "the specifics of this examination are lacking in the record" (AR 17); (2) although Dr. Yee, the rheumatologist, also found 18 of 18 tender points associated with fibromyalgia, Plaintiff did not

meet the diagnostic criteria for fibromyalgia[2] because Dr. Yee characterized these as "tender" as opposed to "painful" (id.); and (3) after Dr. Yee's initial finding, there is no evidence of follow up care or subsequent examination by Dr. Yee related to the fibromyalgia. (AR 18.) The ALJ then concluded: "The evidence of record does not support a finding that the claimant's diagnosed fibromyalgia caused even more than minimal limitations in her ability to sustain employment, nor does it rule out the other diagnosed severe impairments as being responsible for the symptomology with which she presented." (Id.) The ALJ "noted that most people complaining of fibromyalgia, even those who are properly and accurately diagnosed, are not totally disabled from working." (Id.)

The ALJ's conclusions are factually and legally erroneous. First, to the extent that the ALJ found that he could not credit Ms. Smith's finding of fibromyalgia because the "specifics" of her examination were "lacking in the record," he should have developed the record further. In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288; Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ has a basic duty to inform himself about facts relevant to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n. 1 (1983) (Brennan, J., concurring). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. Tonapetyan, 242 F.3d at 1150. Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry. Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150. The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.

---

[2] The ALJ stated: "According to the official diagnostic criteria developed for fibromyalgia by the American College of Rheumatology in 1990, a person with this condition would have a history of widespread pain and pain in 11 of 18 specific trigger point sites on digital palpitation. Both criteria must be satisfied, and they specify that "tender" is not to be considered painful." (JS 17.)

Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150. Thus, rather than rejecting Ms. Smith's diagnosis, it was the ALJ's duty to develop the record regarding her findings.

Second, contrary to the ALJ's characterization, Dr. Yee explicitly concluded that Plaintiff had fibromyalgia. (AR 173 ("Clinically, the patient does have fibromyalgia.").) Dr. Yee found that Plaintiff "has 18 out of 18 tender points associated with fibromyalgia" in addition to the requisite history of "whole body aches and pains, worse in the upper and lower back area." (AR 172-73.) He did not state that the palpated points elicited only tenderness, nor did he expressly state that they were painful. Rather, he stated that Plaintiff "has" 18 out of 18 tender points, and that the test was clinically indicative of fibromyalgia. (AR 172-73.)

Dr. Yee's notes clearly establish a diagnosis of fibromyalgia. The ALJ's own interpretation of Dr. Yee's notes cannot supersede the clinical conclusions of the physician himself. See, e.g., Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (the ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings") (citing Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)). The finding of generalized body pain since approximately 2003 in conjunction with clinical evidence of 18 of 18 tender points from treating rheumatologist Yee and nurse practitioner Smith (AR 172-73, 207, 209), the finding of 11 of 18 tender points by treating physiatrist Patel (AR 455-56), and the finding by internist Rasin that Plaintiff's tender points remain "unchanged" (AR 190) are more than sufficient to establish the fibromyalgia diagnosis. Moreover, even if the ALJ found Dr. Yee's fibromyalgia diagnosis to be ambiguous, such a finding triggered his duty to conduct an appropriate inquiry. Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150

The ALJ's conclusion that "there is no evidence of follow up care or subsequent examination by Dr. Yee related to the fibromyalgia" (AR 18) is factually erroneous. After Dr. Yee's initial diagnostic evaluation on June 14, 2004, he again examined Plaintiff again in September 2005. (AR 198.) Moreover, the ALJ's implication that Plaintiff was not seeking

treatment for her fibromyalgia following her initial evaluation by Dr. Yee also is factually erroneous. In the period between examinations by Dr. Yee, Plaintiff saw Ms. Smith in the fibromyalgia clinic on September 14, 2004 (AR 207), Dr. Rasin in November 2004 (AR 205), September 26, 2005 (AR 197), October 11, 2005 (AR 196), February 2006 (AR 193), and February 7, 2007 (AR 471-74), and Dr. Patel in April 2007. (AR 455-56.) While it is true that there was a one year gap in Plaintiff's treatment between February 2006 and February 2007, Plaintiff explained that this gap was due to her lack of health insurance. (AR 471-72.) A claimant's explained failure to seek medical care does not itself constitute a valid reason to discount her claim. See, e.g., Smolen, 80 F.3d at 1284 (inability to afford treatment is a "good reason" for not obtaining it); Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (error to reject examining doctor's opinion where claimant failed to seek treatment from mental health professionals because of his poverty). The ALJ's reliance on Plaintiff's alleged lack of follow up in finding that her fibromyalgia was not a severe impairment is both factually and legally unfounded.

The ALJ also broadly asserted that "most people complaining of fibromyalgia . . . are not totally disabled from working." (AR 18.) His position is not supported by the cases he cites. In Preston v. Sec'y of Health and Human Svcs., 854 F.2d 815, 818 (6th Cir. 1988), the court acknowledged that patients with "fibrositis" (now known as fibromyalgia) typically have severe musculoskeletal pain accompanied by unremitting pain, stiffness, and fatigue due to sleep disturbances, and "fibrositis patients, like [the claimant], cannot sit, stand, or maintain any one position for any length of time." Id. at 817-18. In Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996), the court stated that, while "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working . . . most do not, and the question is whether [the claimant] is one of the minority." Id. at 307. The Seventh Circuit's comment that "most" people's fibromyalgia is not disabling is unsupported by any citation. The ALJ's reliance on this comment regarding the statistical prevalence of non-disabling fibromyalgia is simply unfounded and without factual support in the record. Even if it were true that fibromyalgia is usually not disabling, it does not answer the question of whether this Claimant suffers from disabling

fibromyalgia. See Sarchet, 78 F.3d at 309 (reversing the finding of non-disabling fibromyalgia and remanding to a different ALJ due to the previous ALJ's apparently "unshakable commitment to the denial of this applicant's claim").

At step two of the sequential evaluation process, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290) (emphasis added). The ALJ was justified in rejecting Plaintiff's fibromyalgia as a severe impairment only if it was "so slight" that it was "unlikely [she] would be found to be disabled even if [her] age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, in considering the evidence of Plaintiff's fibromyalgia, the ALJ failed to develop the record adequately, improperly rejected or mischaracterized the opinions of Plaintiff's treating physicians, and substituted his own medical judgment for those of the treating physicians. The ALJ simply did not consider the evidence properly so as to allow him to conclude that Plaintiff's fibromyalgia was not a severe impairment. Accordingly, the ALJ's decision must be reversed and remanded for a valid consideration of the evidence of Plaintiff's alleged severe medical impairments and assessment of the functional limitations stemming from those impairments or combination of impairments.[3]

///
///
///
///
///

---

[3] Upon remand, the ALJ must properly consider at step two the evidence regarding Plaintiff's fibromyalgia and conduct the five-step sequential evaluation again. Accordingly, the Court does not address the parties' second and third disputed issues, which go to the ALJ's findings at step four.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is reversed and this matter is remanded for further proceedings in accord with the law and with this Memorandum and Opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 30, 2010                    /s/ John E. McDermott
                                         JOHN E. MCDERMOTT
                                         UNITED STATES MAGISTRATE JUDGE